## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CHRISTOPHER KELLY**                                                                 **PLAINTIFF**

**VS**                                                          **CIVIL ACTION NO.:** 1:23cv131 LG-BWR

**HEAD MERCANTILE COMPANY, INC**
**DBA STRATEGIC OUTSOURCING SOLUTIONS**
**AKA SOS GROUP & TREWOLLA SWEATMAN, PLLC**            **DEFENDANTS**

---

### COMPLAINT – JURY TRIAL DEMANDED

---

Plaintiff Christopher Kelly (hereinafter, "Plaintiff"), a Mississippi resident, brings this Complaint by and through his attorneys, against Head Mercantile Company, Inc. DBA Strategic Outsourcing Solutions AKA SOS Group (hereinafter "HMC") and Trewolla Sweatman, PLLC (hereinafter "Trewolla"), showing unto the Court the following:

### INTRODUCTION/PRELIMINARY STATEMENT

1. Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. §1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id.* Congress concluded that "existing laws…[we]re inadequate to protect consumers," and that "'the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

2. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *ld.* § 1692(e).

3. After determining that the existing consumer protection laws "were inadequate" *id* § l692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id.*.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this class action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692 et. seq. and 28 U.S.C. § 2201. If applicable, the Court also has pendant jurisdiction over state law claims in this action pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

6. Venue is proper in the Southern Division because the Plaintiff resides in Harrison County Mississippi and the actions of the Defendants included filing a falsified complaint against the Plaintiff in the County Court of Harrison County.

## NATURE OF THE ACTION

7. Plaintiff brings this action under § 1692 et seq. of Title 15 of the United States Code, commonly referred to as the Fair Debt Collections Practices Act ("FDCPA") against Defendants for their actions in filing a lawsuit against Plaintiff for debts that did not belong to Plaintiff, refusing to dismiss the same lawsuit even after the Defendants were aware that the Plaintiff did not owe the Debts, and for publishing inaccurate information about Plaintiff to one or more Consumer Reporting Agencies.

## PARTIES

8. Plaintiff is a resident of Harrison County, Mississippi.

9. Defendant HMC is a "debt collector" as the phrase is defined in 15 U.S.C. § 1692(a)(6).

10. HMC is a company that uses the mail, telephone, and facsimile and regularly engages in business the principal purpose of which is to attempt to collect debts alleged to be due another.

11. HMC is an Ohio corporation that is not registered to conduct business in the State of Mississippi. It may be served by certified mail addressed to its registered agent, James Scharfeld at its principal address: 29065 Clemens Rd. #200 Westlake, OH 44145.

12. During the time period relevant to this action, HMC was acting as a debt collector for Memorial Hospital at Gulfport.

13. Defendant, Trewolla, is a law firm with its principal place of business at Lamar Life Building, Suite 505, 317 East Capitol Street, Jackson, MS 39201. It may be served by personal service upon David Trewolla, its registered agent.

14. Trewolla is a Debt Collector as defined by 15 U.S.C. §1692a.

15. Trewolla regularly collects or attempts to collect debts owed or asserted to be owed or due to another.

16. During the time period relevant to this action, Trewolla was acting as a debt collector for Memorial Hospital and/or HMC.

**FACTUAL ALLEGATIONS**

17. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs numbered above herein with the same force and effect as if the same were set forth at length herein.

18. In 2001, Plaintiff fathered a child named Brandon Kelly.

19. Plaintiff was not a custodial parent of Brandon but pursuant to a 2004 judgment issued by the Harrison County Chancery Court in *Department of Human Services, State of Mississippi v. Christopher Kelly,* Case No. 2402-04-199 ("the Paternity Judgment"), was required to maintain health insurance for Brandon Kelly.

20. In November 2017, Brandon Kelly was admitted to Memorial Hospital at Gulfport.

21. At the time Brandon was admitted to Memorial Hospital, Brandon's mother, Gidget Necaise, executed an authorization consenting to treatment and guaranteeing payment for medical services provided to Brandon Kelly.

22. Plaintiff was unaware of Brandon's admission to Memorial Hospital and did not consent to treatment nor did he guarantee payment for medical services provided to Brandon Kelly.

23. Pursuant to the July 2017 admission to Memorial Hospital, Brandon and his mother incurred a debt to Memorial Hospital at Gulfport totaling $13,292.10.

24. At the time of admission, Brandon was covered by Plaintiff's insurance.

25. Even though it could have done so, Memorial Hospital at Gulfport apparently did not seek or obtain reimbursement from Plaintiff's insurer for Brandon's treatment.

26. In July 2021, Brandon Kelly was again admitted to Memorial Hospital at Gulfport.

27. Brandon executed an authorization consenting to treatment and guaranteeing payment for medical services.

28. Plaintiff was unaware of Brandon's 2021 admission to Memorial Hospital and did not consent to treatment nor did he guarantee payment for medical services provided to Brandon Kelly.

29. Pursuant to the July 2021 admission to Memorial Hospital, Brandon and his mother incurred a debt to Memorial Hospital at Gulfport totaling $4,183.00.

30. At the time of admission, Brandon was covered by Plaintiff's insurance.

31. Even though it could have done so, Memorial Hospital at Gulfport apparently did not seek or obtain reimbursement from Plaintiff's insurer for Brandon's 2021 treatment.

32. On separate occasions, Plaintiff incurred debts to Memorial Hospital at Gulfport totaling $394.92.

33. The debts purported to be owed by Brandon Kelly, Gidget Necaise, and Plaintiff were obligations that arose out of a transaction in which money, property, insurance or services, which are the subject of the transaction, are primarily for personal, family or household purposes, specifically medical services.

34. The alleged obligations are "debts" as defined by 15 U.S.C.§ 1692a(5).

35. Memorial Hospital at Gulfport improperly determined that Plaintiff was a guarantor for Brandon's 2017 and 2021 bills.

36. Memorial Hospital at Gulfport subsequently assigned or retained HMC to collect the all of the aforementioned debts from the Plaintiff.

37. HMC regularly collects or attempts to collect debts owed to third parties in which said debts were incurred or alleged to have been incurred for personal, family or household purposes on behalf of creditors using the United States Postal Services, telephone, and/or the internet.

38. Upon being assigned to collect the debts incurred by Brandon Kelly, HMC began to furnish information to one or more Consumer Reporting Agency stating that Plaintiff owed the debts to Memorial Hospital.

39. In furnishing information to one or more Consumer Reporting Agency, HMC falsely represented that Plaintiff was financially responsible for the Brandon Kelly medical bills.

40. HMC's actions in reporting that Plaintiff was liable for Brandon Kelly's bills adversely affected Plaintiff's credit score.

41. HMC then retained Trewolla regarding the collection of the aforementioned debts.

42. Trewolla regularly collects or attempts to collect debts owed to third parties in which said debts were incurred or alleged to have been incurred for personal, family or household purposes on behalf of creditors using the United States Postal Services, telephone, and/or the internet.

43. In a letter dated January 3, 2023, Trewolla acknowledged its status as a debt collector under the FDCPA by stating "THIS COMMUNICATION IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." A copy of this letter is attached as Exhibit A.

44. The letter demanded payment of $23,693.36 – which includes the total of the aforementioned debts as well as an attorneys' fees of $5,923.34.

45. The letter from Trewolla falsely states that Plaintiff signed a "Consent for Treatment and Terms and Conditions of Service" regarding Brandon Kelly's medical bills. Exhibit A.

46. On March 15, 2023, Trewolla filed a Complaint in *Memorial Hospital at Gulfport v. Christopher Kelly,* Case No. D2401-23-347 ("the County Court suit"), in the County Court of Harrison County. A copy of this Complaint is attached as Exhibit B.

47. Even though the Plaintiff is identified as Memorial Hospital at Gulfport, it appears from the allegations of paragraph 6 of the Complaint that HMC was the party responsible for employing Trewolla and initiating the suit.[1]  Exhibit B.

48. Plaintiff responded to the Complaint with a letter dated March 22, 2023 and addressed to Trewolla. A copy of this letter is attached as Exhibit C.

---

[1] This paragraph states: "The Plaintiff further shows that a representative of Memorial Hospital has signed an Authorization for Legal Action Affidavit as to Defendant's account, and a copy of the Authorization is attached as exhibit "B" to. this Complaint. The Authorization is directed to Strategic Outsourcing Solutions, a collections business located in Westlake, OH, **which has further assigned the filing of this Complaint to the undersigned counsel of record."** Exhibit B. (emphasis added).

49. The letter explains that Plaintiff did not consent to Brandon Kelly's medical bills and further offered to pay the debts properly owed by Plaintiff. Exhibit C.

50. The letter was filed upon the County Court docket as a *pro se* answer.

51. Defendants took no action to amend their Complaint and continued to falsely represent to the County Court that the Brandon Kelly bills were owed by the Plaintiff.

52. On March 24, 2023, Trewolla propounded discovery requests to the Plaintiff in the County Court suit.

53. It appears that Trewolla's decision to propound discovery in this matter was under the assumption that most *pro se* litigants ignore discovery and if Plaintiff failed to respond to certain requests for admission, Trewolla would be able to advance a summary judgment motion in favor of his client.

54. Even though Trewolla was aware – or should have been aware – that Plaintiff was not legally liable for Brandon Kelly's medical bills, Trewolla continued to advance the County Court suit in pursuit of a $23,909.36 judgment against Plaintiff – more than sixty times what the Plaintiff actually owed to Memorial Hospital at Gulfport.

55. Eventually, Plaintiff sought legal representation to defend the County Court suit.

56. On April 12, 2023, the undersigned sent an email to David Trewolla, an attorney with Trewolla, again explaining that Plaintiff was not liable for Brandon Kelly's medical bills and requesting that the claims be dismissed.

57. On April 13, 2023, Trewolla stated "[a]t this point, Memorial will not dismiss the claims."

58. Thereafter, Trewolla was informed that if Memorial Hospital would not dismiss the claims related to Brandon Kelly's medical bills by April 22, 2023, that Memorial would face a counterclaim under the Mississippi Litigation Accountability Act, Miss. Code §11-55-5.

59. Trewolla was also informed "[y]our firm may also bear some liability for misrepresenting the amount and nature of the debt in correspondence to Chris Kelly and by presenting legal claims that are unsupported by law or contract."

60. On April 24, 2023, Plaintiff – through counsel – filed an Amended Answer, Counterclaim against Memorial Hospital at Gulfport, and a third-party complaint against HMC.

61. After receipt of the Amended Answer, Counterclaim against Memorial Hospital at Gulfport, and Third-Party Complaint against HMC, Trewolla agreed to a mutual dismissal of claims on behalf of Memorial Hospital at Gulfport.

62. As a result of Defendants' suit against the Plaintiff, Plaintiff incurred more than $2,500.00 in attorneys' fees in defense of the County Court suit including the drafting and filing of pleadings, in the drafting of discovery responses, and in discussions with Trewolla.

63. All of these attorneys' fees could have been avoided if Trewolla had dismissed the claims related to Brandon's medical bills and accepted Plaintiff's offer to pay the bills that he owed.

64. The attorneys' fees incurred by Brandon would have been much lower if Trewolla had agreed to dismiss the claims related to Brandon's medical bills prior to April 22, 2023 – the deadline provided by Plaintiff's counsel to Trewolla.

65. Following the dismissal of the County Court suit, HMC continued to report to one or more Consumer Reporting Agencies that Plaintiff owed the debts stemming from Brandon Kelly's medical bills.

66. Plaintiff incurred additional costs including attorneys' fees and postage in disputing the accounts reported by HMC.

67. Because of Defendants' actions in falsely reporting a debt and in initiating a lawsuit against the Plaintiff asserting false claims, Plaintiff has incurred actual damages including attorneys' fees.

68. As a result of Defendant's actions in initiating a lawsuit against Plaintiff asserting false claims, Plaintiff has been subjected to unnecessary and undue stress, anxiety, and emotional distress.

69. Despite the obvious fact that Plaintiff was not liable for Brandon Kelly's bills, Defendants forced Plaintiff to retain an attorney to defend the lawsuit and file a responsive pleading before they would agree to dismiss their frivolous claims against Kelly.

70. Trewolla, a law firm, was obligated under Rule 11 of the Mississippi Rules of Civil Procedure, Rules 3.1, 3.3, and 3.4 of the Mississippi Rules of Professional Conduct to investigate the merits of its client's claims before filing the County Court suit.

71. Trewolla failed to investigate the merits of its client's case in the County Court suit prior to filing the Complaint and it failed to amend the Complaint – even after it was made aware that its claims related to the Brandon Kelly bills were meritless and even after it was notified that a counterclaim would be filed against its client under the Mississippi Litigation Accountability Act.

72. Trewolla only agreed to dismiss the claims after Plaintiff had incurred significant costs in defense of Defendants' meritless claims.

73. Defendants' actions were in violation of the FDCPA.

74. These violations by Defendants were knowing, willful, negligent and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

75. Defendants' collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm, *inter alia*, because the FDCPA provides Plaintiff with the legally protected right to be not to be misled or treated unfairly with respect to any action for the collection of any consumer debt.

76. Trewolla's actions in prosecuting and maintaining a suit against Plaintiff for bills that he did not owe were in direct contradiction to the ethical obligations of the legal profession and appear to be designed to coerce Plaintiff into paying fees that Trewolla was not legally allowed to recover.

77. Defendants' deceptive, misleading and unfair representations with respect to its collection efforts were material misrepresentations that adversely effected Plaintiff by requiring Plaintiff to incur attorneys' fees in defense of a lawsuit against him.

78. Defendant's actions created an appreciable risk to Plaintiff of being subjected to a judgment for $23,909.36 while he only owed $394.92.

## COUNT I: HMC VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

79. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs above herein with the same force and effect as if the same were set forth at length herein.

80. HMC's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

81. Pursuant to 15 U.S.C. §1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

82. HMC made false and misleading representations to one or more Consumer Reporting Agencies as to the amount of the debt purportedly owed by Plaintiff.

83. HMC made a false and misleading representation to Trewolla as to the amount of the debt purportedly owed by Plaintiff.

84. HMC made a false and misleading representation to the County Court of Harrison County as to the amount of the debt purportedly owed by Plaintiff.

85. 15 U.S.C. §1692f prohibits the use of unfair or unconscionable means to collect a debt.

86. HMC used unfair means to attempt to attempt to collect a debt from the Plaintiff.

87. Specifically, HMC initiated a lawsuit against Plaintiff including claims for debts that he did not owe and HMC refused to dismiss these claims – even after it was aware that Plaintiff did not owe the debts.

88. HMC used unfair means to collect a debt by initiating a lawsuit in the name of Memorial Hospital at Gulfport when HMC was the real party in interest.

89. HMC's actions in violation of the FDCPA have caused Plaintiff to incur actual damages including attorneys' fees.

90. HMC's actions in violation of the FDCPA has subjected the Plaintiff to unnecessary and undue stress, anxiety, and emotional distress.

91. HMC is liable to Plaintiff for a judgment of actual damages, statutory damages, costs and attorneys' fees.

### COUNT II: TREWOLLA VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

92. Plaintiff repeats, reiterates and incorporates the allegations contained in paragraphs above herein with the same force and effect as if the same were set forth at length herein.

93. Trewolla's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

94. Pursuant to 15 U.S.C. §1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

95. Trewolla made false representations to the County Court of Harrison County as to the amount of the debt purportedly owed by Plaintiff.

96. Trewolla made false representations to the Plaintiff regarding the amount of money owed to Memorial Hospital by Plaintiff.

97. Trewolla falsely represented in its January letter to Plaintiff the amount of the Debt and that the Plaintiff guaranteed Brandon Kelly's medical bills.

98. 15 U.S.C. §1692f prohibits the use of unfair or unconscionable means to collect a debt.

99. Trewolla used unfair means to attempt to attempt to collect a debt from the Plaintiff.

100. Specifically, Trewolla initiated a lawsuit against Plaintiff including claims for debts that he did not owe and refused to dismiss these claims – even after it was aware that Plaintiff did not owe all of the debts.

101. Trewolla, as a law firm, knew or should have known that its actions were violative of Rule 11 of the Mississippi Rules of Civil Procedure, Rules 3.1, 3.3, and 3.4 of the Mississippi Rules of Professional Conduct.

102. Trewolla's violations of the Mississippi Rules of Civil Procedure and of the Rules of Professional Conduct were done to unfairly coerce the Plaintiff into paying debts that he did not owe.

103. Trewolla used unfair means to collect a debt by initiating a lawsuit in the name of Memorial Hospital at Gulfport when HMC was the real party in interest.

104. It is unclear if Memorial Hospital and Trewolla have any contractual relationship. In the event that Trewolla has no contractual relationship with Memorial, Trewolla has misrepresented this relationship to the Plaintiff and to the County Court of Harrison County and in correspondence to the Plaintiff.

105. Even though Plaintiff notified Trewolla that he had no legal obligation to pay for the Brandon Kelly bills, Trewolla refused to dismiss the claims until after forcing Plaintiff to incur attorneys' fees.

106. Trewolla continued to advance the County Court suit by propounding discovery requests with the goal of having Plaintiff inadvertently admit that he owed debts that he did not legally owe.

107. If Plaintiff had not obtained legal representation, Trewolla would have attempted to secure a summary judgment against Plaintiff for $23,909.36.

108. Trewolla's actions against the Plaintiff were dishonest, in bad faith, and offensive to a reasonable practitioner of the law.

109. Trewolla essentially sought to abuse the legal system to compel the Plaintiff into paying debts that Plaintiff did not owe.

110. Trewolla's actions in violation of the FDCPA have caused Plaintiff to incur actual damages including attorneys' fees.

111. Trewolla's actions in violation of the FDCPA has subjected the Plaintiff to unnecessary and undue stress, anxiety, and emotional distress.

112. Trewolla is liable to Plaintiff for a judgment of actual damages, statutory damages, costs and attorneys' fees.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from Defendants as follows:

1. Awarding Plaintiff statutory damages to be paid jointly and severally by the Defendants;

2. Awarding Plaintiff actual damages including damages for emotional distress to be paid jointly and severally by the Defendants;

3. Ordering the Defendants to compensate Plaintiff for attorneys' fees previously incurred;

4. Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses;

5. Awarding pre-judgment interest and post-judgment interest; and

6. Awarding Plaintiff all such other and further relief as this Court may deem just and proper.

Dated: May 24, 2023

/s/ *Michael T. Ramsey*
By: Michael T. Ramsey

**Sheehan & Ramsey, PLLC**
429 Porter Avenue
Ocean Springs, MS, 39564
Phone: (228) 875- 0572
Fax: (228) 875-0895
MS Bar No. 104978
*Attorney For Plaintiff*